IN THE COURT OF APPEALS OF TENNESSEE
WESTERN SECTION AT JACKSON
_____

**FILED**

**December 7, 1998**

**Cecil Crowson, Jr.**
**Appellate Court Clerk**

**DENNIS T. CROUSE,**

      Appellant,

Vs.

              C.A. No. 02A01-9712-CV-00312
              Shelby Law No. 151303

**CHARLANE ALLEN CROUSE,**

      Appellee.

_____

FROM THE SHELBY COUNTY CIRCUIT COURT
THE HONORABLE KAY S. ROBILIO, JUDGE


Richard F. Vaughn of Memphis
For Appellant

Daniel Loyd Taylor, John N. Bean of Memphis
For Appellee


*AFFIRMED AS MODIFIED AND REMANDED*

Opinion filed:


**W. FRANK CRAWFORD**,
**PRESIDING JUDGE, W.S.**


**CONCUR:**

**DAVID R. FARMER, JUDGE**

**F. LLOYD TATUM, SENIOR JUDGE**


This dispute concerns an award of alimony and attorney's fees. Appellant, Dennis T.

Crouse (Husband), appeals from the trial court's order granting alimony *in futuro* and attorney's

fees to Appellee, Charlane Allen Crouse (Wife).

The parties married on August 21, 1971 in Lewis County, New York. A daughter was born of this marriage in 1972, but she is no longer a minor and does not reside with either party. After the marriage, Husband and Wife first lived in New York where they both worked in a bowling pin factory. Due to Husband's subsequent military career, the parties moved to San Antonio, Texas in 1973 and then to Houston, Texas. Upon completing his military career, Husband obtained a Bachelor of Science degree from the University of Houston while Wife worked as a clerk in a fabric store. The parties then moved to Galveston, Texas to enable Husband to attend medical school. While Husband attended medical school, Wife worked as a part-time clerk in a grocery store and as a part-time secretary in the pathology department at the university, eventually quitting the job at the grocery store in order to work full time in the pathology department. After Husband obtained his medical degree in 1982 and completed his residency in 1985, the parties moved from Galveston to Birmingham, Alabama to allow Husband to participate in a fellowship program. At this time, Wife worked as an administrative secretary in addition to providing sewing services from the parties' home. Wife stopped working outside of the home in 1989 in order to pursue her sewing business. In 1993, the parties moved to Memphis, Tennessee to enable Husband to take a position at the University of Tennessee.[1]

On February 13, 1996, Husband filed a complaint for divorce alleging irreconcilable differences and inappropriate marital conduct on the part of Wife. Wife filed an answer admitting irreconcilable differences while denying guilt of inappropriate marital conduct, and filed a counter-complaint alleging inappropriate marital conduct on Husband's part. On March 24, 1997, the trial court entered a decree granting absolute divorce pursuant to T.C.A. § 36-4-129 which incorporated the parties' stipulated property settlement while reserving the issues of spousal support and attorney's fees. On November 17, 1997, the trial court entered a final decree of divorce awarding Wife alimony *in futuro* in the amount of $3,800.00 per month for forty-eight months, and thereafter in the amount of $2,900.00 per month. The trial court also ordered Husband to pay Wife's attorney's fees and litigation expenses in the amount of $8,750.00. Husband subsequently brought this appeal.

On appeal, Husband presents the following issues for our review:

---

[1] It is also important to note that Husband also worked various jobs to support his family while pursuing his education except for a few years when he was in medical school.

(1) Whether the trial court erred in awarding Wife alimony *in futuro* rather than rehabilitative alimony.

(2) Whether the trial court erred in awarding Wife's attorney's fees and litigation expenses in the amount of $8,750.00.

Since the trial court heard this case sitting without a jury, we review the case *de novo* upon the record with a presumption of correctness of the findings of fact by the trial court. Unless the evidence preponderates against these findings, we must affirm, absent error of law. T.R.A.P. 13(d).

## Alimony

Husband asserts that the trial court should have granted Wife rehabilitative alimony rather than granting her alimony *in futuro*. Husband contends that this is a classic case for an award of rehabilitative alimony in that Wife is in her mid-forties, in good health, had the opportunity during the marriage to pursue further education and training, is currently pursuing a degree in special education, and that he supported Wife's decision to pursue her degree and does not object to paying rehabilitative alimony until she secures her master's degree. He further asserts that rehabilitative alimony is proper in that fault was not a factor in the divorce, the parties did not enjoy a lavish lifestyle, Wife received an adequate amount in the agreed division of property, and that it is uncertain what her needs will be once she completes her education.

On the other hand, Wife asserts that the grant of alimony *in futuro* was warranted by the circumstances and that the award was fair and equitable. She contends that she contributed to her family by working outside the home in several positions in addition to caring for their daughter and the household which in turn allowed Husband to pursue his educational endeavors. Furthermore, Wife asserts that she is not capable of rehabilitation given her age and lack of experience, and that the award of alimony *in futuro* will allow her to more closely approach her former economic position she enjoyed while married. Finally, Wife contends that Husband has the ability to pay the amount ordered by the trial court and that her needs also support the amount awarded.

In Tennessee, there is a preference for rehabilitative alimony. *Aaron v. Aaron*, 909 S.W.2d 408, 410 (Tenn. 1995). Our Supreme Court, in discussing rehabilitative alimony, stated in *Self v. Self*, 861 S.W.2d 360 (Tenn. 1993):

[T.C.A. § 36-5-101(d)(1)] reflects an obvious legislative

3

policy that, if possible, the dependency of one ex-spouse on the other be eliminated and both parties be relieved of the impediments incident to the dissolved marriage, and that an ex-spouse be adjudged permanently dependent upon the other only when the court granting the divorce finds that economic rehabilitation is not feasible and long-term support is necessary.

*Id.* at 361. "However, rehabilitative alimony is offered as an alternative to alimony *in futuro*, not as a replacement." *Ford v. Ford*, 952 S.W.2d 824, 827 (Tenn. App. 1996). T.C.A. § 36-5-101(d)(1) still permits the courts to award long-term support if it appears that rehabilitation is not feasible. *Id.* "Accordingly, our domestic relations laws governing the payment of alimony still acknowledges that:

'The husband, having entered one of the strongest most fundamental relationship known to the law, must continue to bear its financial burden where he can reasonably do so and where it is necessary in order to prevent a relatively greater hardship to the wife.'"

*Id.* (quoting H. Clark, *The Law of Domestic Relations in the United States* § 17.5 at 255 (2nd ed. 1987)).

T.C.A. § 36-5-101(d)(1) (Supp. 1998) provides:

(d)(1) It is the intent of the general assembly that a spouse who is economically disadvantaged, relative to the other spouse, be rehabilitated whenever possible by the granting of an order for payment of rehabilitative, temporary support and maintenance. Where there is such relative economic disadvantage and rehabilitation is not feasible in consideration of all relevant factors, including those set out in this subsection, then the court may grant an order for payment of support and maintenance on a long-term basis or until the death or remarriage of the recipient except as otherwise provided in subdivision (a)(3). Rehabilitative support and maintenance is a separate class of spousal support as distinguished from alimony in solido and periodic alimony. In determining whether the granting of an order for payment of support and maintenance to a party is appropriate, and in determining the nature, amount, length of term, and manner of payment, the court shall consider all relevant factors, including:

(A) The relative earning capacity, obligations, needs, and financial resources of each party, including income from pension, profit sharing or retirement plans and all other sources;

(B) The relative education and training of each party, the ability and opportunity of each party to secure such education and training, and the necessity of a party to secure further education and training to improve such party's earning capacity to a reasonable level;

(C) The duration of the marriage;

(D) The age and mental condition of each party;

4

(E) The physical condition of each party, including, but not limited to, physical disability or incapacity due to a chronic debilitating disease;

(F) The extent to which it would be undesirable for a party to seek employment outside the home because such party will be custodian of a minor child of the marriage;

(G) The separate assets of each party, both real and personal, tangible and intangible;

(H) The provisions made with regard to the marital property as defined in § 36-4-121;

(I) The standard of living of the parties established during the marriage;

(J) The extent to which each party has made such tangible and intangible contributions to the marriage as monetary and homemaker contributions, and tangible and intangible contributions by a party to the education, training or increased earning power of the other party;

(K) The relative fault of the parties in cases where the court, in its discretion, deems it appropriate to do so; and

(L) Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.

"The amount of alimony to be allowed in any case is a matter for the discretion of the trial court in view of the particular circumstances." *Ingram v. Ingram*, 721 S.W.2d 262, 264 (Tenn. App. 1986). In determining the amount of alimony, "the real need of the spouse seeking the support is the single most important factor. In addition to the need of the disadvantaged spouse, the courts most often consider the ability of the obligor spouse to provide support." *Cranford v. Cranford*, 772 S.W.2d 48, 50 (Tenn. App. 1989) (citations omitted). "While alimony is not intended to provide a former spouse with relative financial ease, we stress that alimony should be awarded in such a way that the spouses approach equity." *Aaron*, 909 S.W.2d at 411.

Husband is in his mid-forties and is a neonatologist at the University of Tennessee and the University of Tennessee Medical Group. Husband's income has continued to increase over the years. In 1996, Husband had an income of approximately $150,000.00. Wife is also in her mid-forties. After the divorce, Wife began to pursue a Bachelor of Arts degree with a major in special education. Wife currently is a full-time student and works part time as a student assistant at five dollars per hour. It is estimated that it will take Wife three to four years to complete her

5

Bachelor of Arts degree. Wife then plans to pursue her master's degree in special education which she estimates will take approximately one and one-half to two years to complete. Wife will be fifty or fifty-one years of age upon completion of her education.

At the time of the divorce, the parties agreed on a division of property. As a result of such agreement, each party received assets from various retirement and investment plans. Furthermore, Wife received the marital residence which, at the time of the divorce, was worth approximately $200,000.00 but which had only approximately $30,000.00 in equity. The total amount each party received as a result of the property division was approximately $114,000.00.

During the proceedings below, each party filed a Rule 14 Affidavit of Income and Expenses. Husband's affidavit reveals a gross monthly salary of $10,869.92 and a net monthly salary of $7,713.67. Husband's affidavit further reveals that his monthly expenses for the support of Wife to be $4,091.03 which, according to his affidavit, results in a monthly deficit of $487.75 after payment of his monthly expenses. At the time of the hearing below, Husband admitted that a change in circumstances reduced his monthly deficit to approximately $36.00. On the other hand, Wife's affidavit reveals a gross monthly income of $530.00 and a net monthly income of $397.10. Her affidavit further reveals $5,164.47 in total monthly expenses which results in a monthly deficit of $4,767.37.

With the foregoing, we believe the trial court correctly determined that Wife should be awarded alimony *in futuro*. Wife is economically disadvantaged to Husband. The record reveals that Husband has a greater earning capacity, superior education, and better job training than Wife. Wife also substantially contributed to her family and household in a number of ways which allowed Husband to achieve his superior education and earning capacity.

This was a twenty-six year marriage. During this marriage, Husband has been building a career outside the home while Wife has, for the most part, worked within the home such that she has no college degree and only limited outside-work experience. Wife worked several different jobs, provided for the care of the parties' daughter and household, and freely moved several times to support and contribute to Husband's career. Wife sacrificed her career to follow Husband around the country in furtherance of his career.

The record further reveals that Wife is in need of some support and that Husband has the ability to pay. It is unlikely that Wife will ever be able to approach the level of income which

6

Husband is able to enjoy. Thus, given due consideration to all relevant factors, we are of the opinion that the alimony *in futuro* awarded to Wife is necessary for her to continue to maintain a reasonable standard of living which is at least somewhat comparable to that which she experienced before the divorce.

We therefore believe the trial court's grant of $3,800.00 per month as alimony *in futuro* for forty-eight months to be correct given that this will allow Wife to complete her education. However, we find the grant of $2,900.00 per month as alimony *in futuro* to be excessive. While we agree that granting alimony *in futuro* rather than rehabilitative alimony was correct in this aspect, we believe that Wife's award should be reduced to $2,000.00 per month as alimony *in futuro* and that such be terminated upon the death or remarriage of Wife. As this Court stated in *Lancaster v. Lancaster*, 671 S.W.2d 501 (Tenn. App. 1981):

> Alimony is not and never has been intended by our legislature to be punitive. Nor do we believe it was intended simply as an award for virtue. It is not designed to serve as an annuity for the wife; or as Professor Clark has stated "[t]he purpose of alimony is to care for the wife's needs after divorce, not to provide her with a life-time profit-sharing plan."

*Id.* at 503 (citations omitted).

It is unclear what Wife's needs will be upon completion of her education. However, it is clear that Wife will then have the means and ability to support herself somewhat. Furthermore, Wife received a reasonable amount of assets from the property division. Given the foregoing, the award of $2,900.00 per month as alimony *in futuro* was excessive and should be reduced to $2,000.00 per month as alimony *in futuro*. This amount should be more than sufficient to support her once she has acquired her education. However, this is not to say that circumstances may change which may warrant an increase or decrease in the amount of alimony.

**Attorney's Fees**

As previously mentioned, Husband also contests the trial court's order granting $8,750.00 in attorney's fees and litigation expenses to Wife. Husband contends that the trial court erred in granting fees considering the assets Wife received in the division of property and the lack of liquid assets on his part. To the contrary, Wife asserts that she does not have the resources to pay attorney's fees given the fact that she is a full-time student and is only working part time. Furthermore, Wife contends that the parties received the same amount in the property division

and that the majority of her portion was in the form of equity in the marital residence and retirement accounts. Wife also requests that this Court award her attorney's fees incurred on this appeal.

Attorney fee awards are treated as alimony. *Gilliam v. Gilliam*, 776 S.W.2d 81, 86 (Tenn. App. 1988). In determining whether to award attorney's fees, the trial court should again consider the relevant factors in T.C.A. § 36-5-101(d)(1). *Houghland v. Houghland*, 844 S.W.2d 619, 623 (Tenn. App. 1992). Where the wife demonstrates that she is financially unable to afford counsel, and where the husband has the ability to pay, the court may properly order the husband to pay the wife's attorney's fees. *Id.*; *Harwell v. Harwell*, 612 S.W.2d 182, 185 (Tenn. App. 1980). Furthermore, the award of attorney's fees is within the sound discretion of the trial court, and unless the evidence preponderates against the award, it will not be disturbed on appeal. *Lyon v. Lyon*, 765 S.W.2d 759, 762-63 (Tenn. App. 1988).

In the case sub judice, we cannot say that the evidence preponderates against the trial court's finding that Wife is entitled to attorney's fees. Given the status of the parties and the division of property, Wife does not have the resources or ability to pay these fees while Husband readily has the ability to pay such. However, we believe that the respective parties should bear the expense of their own attorney's fees for this appeal.

Accordingly, the decree of the trial court is modified to reduce the award of $2,900.00 per month as alimony *in futuro* to an award of $2,000.00 per month as alimony *in futuro* to terminate upon the death or remarriage of Wife. As modified, the decree is affirmed, and the case is remanded for such further proceedings as are necessary. Costs of the appeal are assessed against the Appellant.

_____
**W. FRANK CRAWFORD,**
**PRESIDING JUDGE, W.S.**

**CONCUR:**

_____
**DAVID R. FARMER, JUDGE**

_____
**F. LLOYD TATUM, SENIOR JUDGE**

8